UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MELVIN MORRIS** | : | **CIVIL ACTION NO. 2:13-cv-2246** |
| **VERSUS** | : | **JUDGE WALTER** |
| **UNITED STATES OF AMERICA** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court are cross-Motions for Summary Judgment [docs. 122, 126] filed by plaintiff Melvin Morris and the government, on the issue of damages recoverable in this wrongful death suit. Both motions are opposed. The court also ordered supplemental briefing on a choice of law issue relating to the Medicaid lien, described below, and both parties have complied. Docs. 136–38. Accordingly, the motions for summary judgment are now ripe for review.

The motions for summary judgment have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For reasons stated below **IT IS RECOMMENDED** that the government's motion for summary judgment [doc. 122] be **DENIED** and that the plaintiff's motion for summary judgment [doc. 126] be **DENIED** as to the parental companionship damages, **GRANTED** as to his entitlement to medical expenses and funeral expenses, and **DENIED AS MOOT** with respect to the claim for damages on behalf of Neikisha Womack. It is also **RECOMMENDED** that funds awarded under the medical expense claim be placed in the registry of the court.

# I.
## BACKGROUND

This action arises from the death of Casandra Womack from colon cancer on February 27, 2009, in Vernon Parish, Louisiana. Doc. 1, pp. 2–3, ¶¶ 5–6; *see* doc. 115, att. 14 (death certificate). Plaintiff Melvin Morris, son of Ms. Womack and independent administrator of her estate, brought suit under the Federal Tort Claims Act. Doc. 1; *see* doc. 126, att. 3 (appointment order). He alleged that his mother's death was caused by the negligence of Bureau of Prisons ("BOP") health care providers in failing to timely diagnose Ms. Womack's condition. Doc. 1, pp. 2–3, ¶¶ 5–6. Specifically, he contends that BOP health care providers failed to recognize Ms. Womack's anemia and abdominal pain as symptoms of her cancer, from the time the anemia was detected at her initial medical screening in 2003, at the Federal Correctional Institution in Tallahassee, Florida, until the cancer was finally diagnosed around August 2007 at the Federal Medical Center Carswell in Fort Worth, Texas. *Id.*

The case was referred to a special master for an opinion on whether the BOP's failure to diagnose constituted negligence. Doc. 105. The special master determined that the government, through a BOP health care provider, had breached the applicable standard of care in its treatment of Ms. Womack, "[leading] to a missed diagnosis of colon cancer and . . . to her eventual death." Doc. 110, att. 1, p. 2. He also found that the "negligence occurred primarily in Florida and stems from inadequate evaluation in 2003." *Id.* The court subsequently adopted the special master's report and findings contained therein. Doc. 117.

Following two settlement conferences before the undersigned, the parties were ordered to submit motions for summary judgment on the issue of damages. Doc. 120. At issue is the plaintiff's ability to recover: (1) damages on behalf of himself and his siblings for loss of parental

companionship, instruction, and guidance, (2) funeral expenses, and (3) medical expenses. *See* doc. 134.

## II.
### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). On cross-motions for summary judgment, the court reviews each motion

independently with the above deference granted to the non-moving party's submissions. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

## III.
### APPLICATION

Suits brought under the Federal Tort Claims Act are governed by the law of the place where the negligence occurred, even if the "operative effect" of that negligence is felt elsewhere. *Richards v. United States*, 82 S.Ct. 585, 590–91 (1962). Thus, even though Ms. Womack's cancer was finally diagnosed in Texas and she ultimately succumbed to it in Louisiana, Florida law controls the government's liability in this case based on the special master's finding that the negligence primarily occurred in that state.

Florida's Wrongful Death Act ("FWDA") creates a right of action for a death caused by the negligence of another. Fla. Stat. Ann. § 768.16 *et seq.* The statute limits both the categories of damages recoverable and persons who may recover them. Under the FWDA, "[t]he action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death." *Id.* at § 768.20. "Survivors" include the decedent's parents, spouse, and children. *Id.* at § 768.18(1). Under the FWDA, minor children (under 25 years of age) are distinguished from adult children. *Id.* at § 768.18(2). Furthermore, damages cannot be speculative and must be proven with reasonable certainty. *Zinn v. United States*, 835 F.Supp.2d 1280, 1328 (S.D. Fla. 2011).

Relevant to this suit, the FWDA allows eligible survivors to recover the following categories of damages:

    1.    Lost support and services, from date of injury to death, and future support and services. Fla. Stat. Ann. § 768.21(1).

    2.    For minor children of the decedent, and all children if there is no surviving spouse: lost parental companionship, instruction, and

-4-

    guidance, and for mental pain and suffering from the date of injury. *Id.* at § 768.21(3).

  3. For a survivor who has paid such expenses, medical and funeral expenses due to decedent's injury or death. *Id.* at § 768.21(5).

  4. Loss of earnings and prospective net accumulations of the estate. *Id.* at § 768.21(6)(a).

The plaintiff did not enumerate the categories under which he sought damages in his complaint. *See* doc. 1. In his motion for summary judgment, he states that he is seeking to recover the following categories of damages on behalf of himself and the below listed individuals:

| **Individual and relationship to Ms. Womack** | **Age at Ms. Womack's death** | **Damages sought/Amount** |
| --- | --- | --- |
| Melvin Morris, son and personal representative of estate | 20 | Lost parental companionship, instruction, and guidance; and mental pain and suffering. Fla. Stat. Ann. § 768.21(3). Amount: TBD |
| Micheal Womack, son | 22 | Lost parental companionship, instruction, and guidance; and mental pain and suffering. Fla. Stat. Ann. § 768.21(3). Amount: TBD |
| Jarvis Womack, son | 21 | Lost parental companionship, instruction, and guidance; and mental pain and suffering. Fla. Stat. Ann. § 768.21(3). Amount: TBD |
| Gabrielle Perry, daughter | 16 | Lost parental companionship, instruction, and guidance; and mental pain and suffering; amount to be determined based on evidence introduced at trial. Fla. Stat. Ann. § 768.21(3). Amount: TBD |
| Neikisha Womack, daughter | 27 | Loss of support and services. Fla. Stat. Ann. § 768.21(1). Amount: TBD |
| Michael T. White, father | N/A | Payment of funeral expenses. Fla. Stat. Ann. § 768.21(5). Amount: $5,550 |

| Estate of Casandra Womack | N/A | Recovery of medical expenses that have become a charge on the estate or were paid by or on behalf of the decedent. Fla. Stat. Ann. § 768.21(6)(b).<br>Amount: $82,377.41, based on medical expenses paid on behalf of Ms. Womack by Louisiana Medicaid. |
|---|---|---|

Doc. 126, att. 1, pp. 2–4; doc. 134, pp. 1–2; *see* doc. 126, att. 4 (Medicaid affidavit of charges); doc. 122, att. 7 (Medicaid lien letter); doc. 133, att. 6 (funeral services bill).[1] In his reply memorandum, however, he acknowledges that he no longer wishes to recover damages on behalf of Neikisha Womack. Doc. 134, p. 1.

### A. *Lost parental companionship damages*

As noted above, § 768.21(3) allows minor children of a decedent to recover for loss of parental companionship, instruction, and guidance, as well as for the mental pain and suffering they endured. *BellSouth Telecomm., Inc. v. Meeks*, 863 So.2d 287, 290 (Fla. 2003). The starting date for measuring damages under this section is "from the date of injury," and recovery may continue through the surviving child's life. *Id.* Florida courts have recognized that there is no objective standard by which to measure lost parental companionship and mental pain and suffering. *Angrand v. Key*, 657 So.2d 1146, 1149 (Fla. 1995). Accordingly, they recommend that the trier of fact be guided by fact witnesses and everyday life experiences rather than attempts to quantify the loss by experts. *Id.*

---

[1] In his briefing the plaintiff asserts that he is entitled to $82,477 in medical expenses. Doc. 126, att. 1, p. 10; doc. 132, p. 2. However, both parties' exhibits show that the amount is as reflected above – $82,377.41. The plaintiff also asserts that $5,500 were paid by Michael T. White for the decedent's funeral expenses. Doc. 126, att. 1, p. 10; doc. 134, p. 2. His own exhibit shows that Mr. White paid a $5,550 bill to the funeral home. *See* doc. 134, att. 1 (White states that he "paid the amount shown on the bill, $5,500, to Labby Memorial Funeral Homes" but the amount on the bill is $5,550).

The government admits that Ms. Womack's four younger children – Melvin Morris, Micheal Womack, Jarvis Womack, and Gabrielle Perry – are eligible to recover for lost parental companionship, et cetera, under § 768.21(3) because they are children of the decedent and were minors under the FWDA at the time of Ms. Womack's death. Doc. 122, att. 1, pp. 11–12. It argues, however, that the children's recovery will be limited because they did not have a close relationship with their mother during her lifetime. Doc. 131, pp. 6–9. It also submits that Jarvis Womack and Gabrielle Perry are entitled to nominal damages only under this category, because the evidence shows that they were raised by other families and that "their relationships with the decedent were more akin to a close relative or friend, not a parent." *Id.* at 6–7.

The parties' disagreements under this claim relate to "the extent of damages, not their eligibility." *Id.* at 6. Morris has submitted sufficient evidence, in the form of declarations and deposition testimony from the four younger children, to raise genuine issues as to the nature and strength of their relationship with Ms. Womack and the extent to which her illness and death impacted them. *Compare* doc. 126, atts. 5, 6, 10, 11 (plaintiff's exhibits – declarations of Jarvis Womack and Gabrielle Perry; deposition excerpts from Melvin Morris and Micheal Womack) *with* doc. 122, atts. 3 and 4, and doc. 130 (government's exhibits – deposition excerpts from Melvin Morris and Micheal Womack, and presentence investigation report for Casandra Womack). Quantification of damages thus involves issues of material fact that must be reserved for trier of fact and summary judgment must be denied as to this claim.

### B. *Funeral expenses*

The next issue is whether funeral expenses may be awarded.

Under the FWDA, funeral expenses may be recovered by a survivor who has paid them. Fla. Stat. Ann. § 768.21(5). Morris maintains that Ms. Womack's funeral expenses were paid by

Michael White, whom he alleges is Ms. Womack's father.[2] To this end Morris initially relied on a funeral services bill and an affidavit from his attorney. Doc. 126, atts. 7, 13. The government countered that this evidence was insufficient to show Mr. White's status or to authenticate the bill. Doc. 131, p. 5. In return, plaintiff provides a declaration from Mr. White, with the funeral services bill attached, in which Mr. White states that he is the natural father of Ms. Womack and that he paid the amount charged for funeral services via the credit card shown on the bill. Doc. 133, att. 6. Accordingly, plaintiff has now offered sufficient proof of the amount he might claim under this category of damages and his eligibility to do so. Because the government raises no other issue of fact, summary judgment on this claim should be granted for plaintiff and denied for the government.

## C. Medical expenses

Finally, the plaintiff claims that he is entitled to summary judgment on his claim for medical expenses, which arises from the $82,377.41 paid by Medicaid for Ms. Womack's care and now asserted as a lien against the estate. *See* doc. 126, att. 4. The government does not dispute that Medicaid would be entitled to recoup this money, and only asserts that it should be allowed to reimburse Medicaid for these charges.[3] Doc. 131, pp. 5–6. Thus only issue is whether the Medicaid charges, which are the only medical expenses claimed, must be made part of the award to the estate.

The government submits that Louisiana law applies to this issue because the lien arises under Louisiana law, and that the government will reimburse Louisiana Medicaid, through the

---

[2] As shown above, the FWDA definition of "survivors" includes the decedent's parents. Fla. Stat. Ann. § 768.18(1).
[3] Initially the government argued that plaintiff could not recover under this claim because he had not shown that the Medicaid payments were "charged to the estate." Doc. 122, att. 1, p. 17. The Medicaid lien letter, attached by the government and cited within that same paragraph, contradicts this assertion.

Louisiana Department of Health and Hospitals, directly as allowed under Louisiana Revised Statute § 46:446(B). Doc. 131, pp. 5–6. Specifically, that statute provides:

> When an injury has been sustained or an illness or death incurred by any person under circumstances creating in some third person or legal entity a legal liability or obligation to pay damages or compensation to that person or to his spouse, representative, or dependent, the [Department of Health and Hospitals] shall have a cause of action against such third party to recover the medical assistance payments the department has paid or is obligated to pay on behalf of the injured, ill, or deceased person in connection with the injury, illness, or death. **The department, a Medicaid managed care organization, or both, may intervene in a suit filed by or on behalf of the injured, ill, or deceased person or his spouse, representative, or dependent against such third party to recover the medical assistance payments the department, Medicaid managed care organization, or each, has paid or is obligated to pay on behalf of the injured, ill, or deceased person in connection with said injury, illness, or death.**

La. Rev. Stat. § 46:446(B) (emphasis added).

The plaintiff maintains that Florida law must control this aspect of the case, as it controls every other aspect of the government's liability. As he notes, Florida has no such direct reimbursement statute. Accordingly, plaintiffs may recover the full amount of medical expenses in a FWDA suit but are still at liberty to negotiate the satisfaction of a Medicaid/Medicare lien from that amount. *E.g.*, *Domino's Pizza, LLC v. Wiederhold*, __ So.3d ___, 2018 WL 2165224 (Fla. Ct. App. 5th Cir. 2018). The plaintiff thus argues that, under Florida law, the medical expenses must be made part of the award and that the estate must be allowed to pursue satisfaction of the Medicaid lien separately. The parties then submitted argument on the choice of law principles implicated by this conflict.[4] Docs. 137, 138.

---

[4] The plaintiff also requests that certain assertions made in and exhibits attached to the government's brief be stricken. Doc. 138, p. 2. Because these requests were not made by separate motion, we decline to grant any relief. Instead this court is capable of evaluating the amount of weight due to the government's evidence and the persuasiveness of its arguments, in light of plaintiff's objections, without resorting to the drastic remedy of a strike.

  The government provides a copy of Louisiana Revised Statute § 46:446 and excerpts from a Louisiana Medicaid Eligibility Manual. Doc. 137, att. 1. The plaintiff complains that these documents both reflect the manual and statute as revised in 2014, after the decedent's death. However, the decedent's notice of the terms is not at issue and the

As noted above, Florida law controls the government's liability in this case because the court has determined that Florida is where the government negligence occurred. Under the doctrine of depecage, however, "different issues in a single case, arising out of a common nucleus of operative facts, may be decided according to the substantive law of different states." *Putnam Resources v. Pateman*, 958 F.2d 448, 465 (1st Cir. 1992). This doctrine may be applied "where the choices influencing decisions differ." *Foster v. United States*, 768 F.2d 1278, 1281 (11th Cir. 1985).

In an FTCA case, the court applies the choice of law principles of the state where the negligent conduct occurred. *Schippers v. United States*, 715 F.3d 879, 888 (11th Cir. 2013) (citing *Richards v. United States*, 82 S.Ct. 585, 591–95 (1962) and 28 U.S.C. § 1346(b)(1)). Because the government negligence occurred in Florida, Florida's choice of law principles apply. Accordingly, we seek to determine under Florida law which state's law can govern the issue of Medicaid reimbursement.

To determine which state's substantive law applies to issues arising from a tort claim, Florida's choice of law rules apply the "significant relationship" test set forth in the Restatement (Second) of Conflict of Laws. *Dopson-Troutt v. Novartis Pharm. Corp.*, 2013 WL 3808205, at *2 (M.D. Fla. Jul. 22, 2013). Under this approach, the court favors the state having the most significant relationship to the occurrence and the parties. *Gonzalez-Gonzalez-Jimenez de Ruiz v. United States*, 231 F.Supp.2d 1187, 1194 (M.D. Fla. 2002). Thus, "[t]he place of injury still

---

plaintiff fails to show which provisions of the statute, as amended in 2014, are substantively different from the law as it existed when Medicaid began to pay Ms. Womack's expenses. *See* 2014 La. Sess. Law Serv. Act 82 (H.B. 814) (WEST). The government also provides a Medicaid Rights and Responsibilities form signed by Ms. Womack on April 10, 2008, in which she was notified generally of the program's right of reimbursement. Doc. 137, att. 2. The plaintiff complains that this exhibit is misleading because it is hearsay and was not authenticated. However, Ms. Womack's voluntary participation in the program is undisputed and the court does not require any evidence on this point. Accordingly, the exhibits do not cause the court to be misled in any way. As for the plaintiff's request to strike two statements from the government's brief [doc. 138, p. 2], the court instead takes notice of plaintiff's opposition to those statements.

determines which state's law applies, **unless some other state has a more significant relationship to the issues**." *Id.* (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999 (Fla. 1980)) (emphasis added). This test recognizes "that the state where the injury occurred may have little actual significance for the cause of action [and o]ther factors may combine to outweigh the place of injury as a controlling consideration, making the determination of applicable law a less mechanical, and more rational, process." *Bishop*, 389 So.2d at 1001. Although the term "depecage" is not used in Florida law, the concept is no stranger to Florida courts. *Dopson-Troutt*, 2013 WL 3808205 at *2. Indeed, Florida courts have long recognized in choice of law analysis that the significant relationship test should be applied "not to a collective sum of issues in dispute, but to each individual issue which arises in the case," meaning that "different substantive issues in a single case may . . . be resolved under the laws of different states where the choices influencing decisions differ." *Id.* (citations and internal quotations omitted).

Louisiana's relationship to the Medicaid lien in this case provides persuasive grounds for applying Louisiana law to the reimbursement mechanisms for that claim. The medical expense debt belongs to Louisiana rather than Florida, as a result of the decedent's decision to obtain care in Louisiana and seek coverage under the state's Medicaid program. Louisiana has expressed a clear policy interest in allowing direct reimbursement to the Louisiana Department of Health and Hospitals ("DHH"), whereas it appears that Florida provides no such option and thus expresses no such interest in the state agency's favor. The plaintiff, who does not appear to have any connection to Florida, fails to show how his interests in acting as middle man to recover the money paid for his mother's medical care by the state overrides that of the state agency to fully recoup any funds payable by a third party. Notably, the plaintiff is able to assert other claims under the FWDA to compensate himself for the loss of his mother and compensate the estate for any expenses.

Meanwhile the DHH – an entity which covers many needs for Louisiana citizens – has no other avenue identified in this case for obtaining reimbursement for the funds it expended on the decedent's care. Thus, because Florida has no relationship to the medical expenses claimed here and indeed the only medical expenses claimed are those for which Louisiana should be reimbursed, Louisiana law should apply to this issue and this issue alone.[5] The Louisiana Department of Health and Hospitals, as administrator of Medicaid, therefore has a right of intervention and direct reimbursement under Louisiana Revised Statute § 46:446(B) and this court should apply Louisiana law to address all other concerns over the Medicaid lien as they arise in this suit.

DHH has yet to intervene in this suit, although it received notice of same from plaintiff on January 26, 2018. Doc. 138, att. 2. The government makes no mention of any effort by DHH to intervene, and instead suggests that the court "place the entire lien amount . . . in a trust account or the registry of the court so that Medicaid can exercise their right as assigned in the contract Ms. Womack signed when she became a Medicaid recipient." Doc. 137, p. 2.

The Louisiana Third Circuit Court of Appeal has found that DHH's failure to exercise its right under § 46:446(B) supports a decision not to award damages directly to the department when it chose not to be a litigant. *Cole v. State ex rel. Dep't of Transp. and Dev.*, 755 So.2d 315, 328 (La. Ct. App. 3d Cir. 1999). Furthermore, under the same statute that creates DHH's right of

---

[5] The plaintiff also asserts, briefly, that if Louisiana law applies to this issue, it should also extend to allowing the estate to bring a survivorship action and recover for Ms. Womack's pain and suffering before her death, which is not permitted under Florida law. Doc. 134, p. 5 n. 7. Unlike the medical expenses claim, any survivorship claim would not give rise to a right of intervention for a Louisiana third party, nor would it result in recovery of additional damages that could be claimed by a state agency. *See Weaver v. Malinda*, 980 So.2d 55, 58–59 (La. Ct. App. 5th Cir. 2008) (citing *Ark. Dep't of Health and Human Svcs. v. Ahlborn*, 126 S.Ct. 1752 (2006)) (DHH only entitled to reimbursement from portion of settlement allocated to medical expenses); *Duplechain v. Jalili*, 52 So.3d 1072, 1076–77 (La. Ct. App. 3d Cir. 2010) (same). Plaintiff's only basis for invoking Louisiana law for a survivorship issue, despite the general application of Florida law determined supra, appears to be maximization of his own recovery. This objective pales in comparison to the third party/state agency interests at issue with the Medicaid lien. Accordingly, there is no basis for undermining the general applicability of Florida law to the damages that may be recovered by the decedent's heirs and on behalf of the estate.

intervention in such suits, the Medicaid lien is subservient to a lien asserted by an attorney. *Duplechain v. Jalili*, 52 So.3d 1072, 1076–77 (La. Ct. App. 3d Cir. 2010); *see* La. Rev. Stat. § 46:446(G). Louisiana therefore recognizes a policy interest in favor of plaintiff's counsel, and by extension of at least one circuit court in Louisiana, the plaintiff himself, when DHH had the opportunity to intervene and chose not to. However, we cannot endorse such an extreme position that would allow plaintiff to take possession of the funds just because DHH failed to intervene to protect the lien it had already asserted. All of the funds recoverable by plaintiff in this claim represent the medical care his mother received at DHH's expense. DHH's failure to intervene should only harm DHH's ability to recover the funds to the extent provided in the statute – by exposing those funds to any lien plaintiff's counsel might have. *See* La. Rev. Stat. § 46:446(G).

Accordingly, the plaintiff is entitled to recover the full amount of the Medicaid lien as medical expense damages under the FWDA. Louisiana law applies in this matter to the extent that DHH has the opportunity to intervene and thereby obtain direct reimbursement. Summary judgment should thus be granted as to plaintiff's entitlement to these damages, as administrator of the estate. In the absence of any intervention by DHH, as suggested by the government, the funds awarded under this claim should be placed in the registry of the court rather than given directly to plaintiff.

### IV.
#### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the government's motion for summary judgment [doc. 122] be **DENIED** and that the plaintiff's motion for summary judgment [doc. 126] be **DENIED** as to the parental companionship damages, **GRANTED** as to his entitlement to medical expenses and funeral expenses, and **DENIED AS MOOT** with respect to

the claim for damages on behalf of Neikisha Womack. It is also **RECOMMENDED** that funds awarded under the medical expense claim be placed in the registry of the court.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 16th day of July, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE